J. Michael Keyes (SBN 262281)
*keyes.mike@dorsey.com*
**DORSEY & WHITNEY LLP**
305 Lytton Avenue
Palo Alto, CA 94301
Telephone: (650) 843-2759
Facsimile: (206) 903-8820

Attorneys for Plaintiff
Early Warning Services, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EARLY WARNING SERVICES, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>HACHETTE FILIPACCHI PRESSE, a foreign corporation,<br><br>Defendant. | Case No.<br><br>**VERIFIED COMPLAINT FOR DECLARATORY RELIEF UNDER THE LANHAM ACT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION AND SUMMARY OF REQUESTED RELIEF

Plaintiff Early Warning Services, LLC ("Early Warning") hereby alleges the following Complaint for Declaratory Relief against Defendant Hachette Filipacchi Presse ("Hachette"):

1. Early Warning files this Complaint pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, in order to completely and fully dispose of objectively baseless claims of trademark infringement and trademark dilution alleged by Hachette.

VERIFIED COMPLAINT                                    1

2. Early Warning is co-owned by Bank of America, BB&T, Capital One, JPMorgan Chase, Wells Fargo, U.S. Bank, and PNC. Early Warning facilitates trusted data exchange to help organizations fight fraud, reduce operational costs, and enhance customer service. For over 25 years, Early Warning has been a leader in financial technology that protects and advances the global financial system.

3. Hachette is the publisher of ELLE magazine and, on information and belief, maintains substantial business operations in California and in this judicial district. The magazine focuses on fashion, beauty, health, and entertainment.

4. Early Warning has developed a financial product and network that will facilitate peer-to-peer, business disbursements, and customer-to-business payments (collectively "P2P payment products") over the Internet, and which is scheduled for release in the first quarter of 2017 under the names ZELLE, the "stylized" version *Zelle*, and, ZELLEPAY (the "Zelle Marks").

5. In preparation for the release of the P2P payment products under the Zelle Marks, Early Warning has been heavily investing in a variety of brand and product development initiatives including: preparation of marketing and advertising collateral; software development; consumer-facing user interfaces branded with the Zelle Marks; and visual media materials that are designed around the Zelle Marks. Samples of Early Warning's marketing and advertising collateral are attached hereto as **Exhibit A**.

6. Early Warning also has filed multiple trademark applications for the marks ZELLE, ZELLEPAY, *Zelle*, and stylized "Z" with the United States Patent & Trademark Office ("USPTO"). With respect to all three applications for the Zelle Marks, the trademark

examining attorney at the USPTO indicated that she "searched the Office's database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d)." True and correct copies of the USPTO file wrappers for the applications are attached hereto as **Exhibits B, C, and D**.

7. On June 22, 2016, Hachette sent a demand letter to Early Warning. The letter wrongfully implies that Hachette has a monopoly on all marks that include the four-letter sequence E-L-L-E and threatens adverse and imminent legal action if Early Warning does not agree to the demands set forth in Hachette's letter. Specifically, Hachette claims that the Zelle Marks infringe and dilute the "ELLE" trademark (the "ELLE Mark"). Hachette demands that Early Warning must withdraw its U.S. and European trademark applications for the Zelle Marks. Hachette further demands that Early Warning "must cease all use" and must "never use in the future ZELLE and/or Zelle." And, finally, Hachette attempts to dictate how Early Warning can use the ZELLEPAY mark, i.e. "always use the trademark ZELLEPAY as a whole i.e [sic] in one word without any space and/or other insertion…" The demand letter suggests that Early Warning may wish to retain counsel. A true and correct copy of that letter is attached hereto as **Exhibit E**.

8. Hachette's allegations of infringement and dilution are meritless, overreaching, and advanced in bad faith. Notwithstanding the baseless nature of these claims, the threats and demands made by Hachette have created a concrete case in controversy between two parties with adverse legal interests of sufficient immediacy for adjudication by this Court. Consequently, pursuant to the Declaratory Judgments Act, Early Warning seeks a declaration

VERIFIED COMPLAINT 3

of non-infringement, non-dilution, and recovery of attorneys' fees and costs for being forced to defend against Hachette's burdensome and oppressive claims.

## PARTIES, JURISDICTION, AND VENUE

9. Early Warning is a corporation formed under the laws of the State of Delaware. Early Warning has a principal place of business at 16552 N. 90th Street, Suite 100, Scottsdale, Arizona 85260.

10. On information and belief, Hachette is a foreign corporation with a principal place of business at 149 rue Anatole France, Levalloi-Perret Cedex, 92534, France.

11. This Court has subject matter jurisdiction over this dispute under 28 U.S.C. §§ 1331, 1338(a), 15 U.S.C. § 1121, and 28 U.S.C. § 2201.

12. This Court has personal jurisdiction over Hachette because, on information and belief, Hachette has for years routinely sold numerous copies of ELLE magazine in this judicial district. On information and belief, the ELLE marks have also been widely advertised in this judicial district. On further information and belief, Hachette maintains a robust marketing and sales office in this judicial district. For example, the West Coast Sales Director of Elle Magazine is located in this judicial district and she is in charge of "overseeing print and multi-channel media sales across a wide variety of national accounts based in San Francisco and Northwest territories."

13. Early Warning has business operations in the State of California related to its new financial product. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**INTRADISTRICT ASSIGNMENT**

14. Intradistrict assignment of any Division of the Northern District is proper under Local Rule 3-2(c) and the Assignment Plan of this Court as an "Intellectual Property Action."

**FACTS SUPPORTING CAUSES OF ACTION**

**Early Warning's development and marketing of
ZELLE person-to-person payment product and service**

15. Early Warning has developed P2P payment products that are planned for release in the first quarter of 2017. These P2P payment products will be marketed and provided to end users branded with the Zelle Marks.

16. The first of the P2P payment products is scheduled for release in first quarter of 2017.

17. The P2P payment products will provide secure payment and money transfer options and permit account holders to make payment requests.

18. As part of the planned marketing campaign, Early Warning has invested significant resources in brand development.

19. For example, Early Warning hired a major marketing agency that services Fortune 100 companies.

20. The marketing agency proposed a list of names for Early Warning's P2P payment products. After a deliberate selection process, Early Warning chose the name ZELLE for these new P2P payment product offerings.

21. After selecting the name ZELLE, Early Warning filed U.S. trademark applications for the mark ZELLE, the "stylized" version Ƶelle, ZELLEPAY, and a stylized

VERIFIED COMPLAINT                             5

letter Z. As noted previously, copies of the applications are included in the file wrappers that are attached as **Exhibits B, C, and D**.

22. The marketing agency together with Early Warning have developed marketing and visual graphics materials for the P2P payment products around the mark ZELLE.

23. The marketing agency together with Early Warning have developed a graphical user interface for the P2P payment products at least partially around the mark ZELLE.

24. Within the last month, Early Warning launched the website www.zellepay.com, where individuals will be able to sign up for an early release of the P2P payment products. A screenshot of the home page of the website is attached as **Exhibit F**.

25. Early Warning has spent millions of dollars to prepare the marketing campaign for the upcoming launch of the P2P payment products.

**Hachette's Elle Mark and the threatening and overreaching demand letter**

26. Hachette publishes ELLE magazine that focuses on fashion, beauty, health, and entertainment.

27. Hachette owns numerous U.S. registrations for the ELLE Mark. None of these registrations have anything remotely to do with providing financial transaction services of any sort like Early Warning will provide under the Zelle Marks. Instead, these registrations center around such things as: "Beauty and cosmetic products" (U.S. Trademark Registration No. 4,314,947); a variety of beverages such as "drinking water with vitamins, mineral or herb base; energy drinks enhanced with vitamins" (U.S. Trademark Registration No. 4,193,075); and, "Downloadable electronic publications in the nature of magazines and newsletters in the

field of beauty, fashion, cooking, music, theater, cinema, literature, arts, education, home decoration, gardening, landscaping" (U.S. Trademark Registration No. 3,745,516).

28. On June 29, 2016, Early Warning received a demand letter from Hachette. A copy of the demand letter is attached as **Exhibit E**.

29. The demand letter claims that Early Warning's use and registration of the Zelle Marks will mislead consumers into conceiving an association or link between Early Warning and Hachette and is likely to dilute the ELLE Mark.

30. The demand letter proposes a purported "resolution," sets a 20-day response deadline, and threatens action by Hachette against Early Warning if a response is not received within the demanded deadline.

31. The proposed resolution would entail Early Earning: (1) withdrawing its U.S. and European trademark applications for the Zelle Marks: (2) agreeing to "never use" in the future ZELLE and/or Zelle; and (3) limiting its use of the ZELLEPAY mark. Hachette has no legitimate legal or factual basis to make such demands.

**CAUSES OF ACTION**

**COUNT I - CLAIM FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

32. Early Warning repeats the allegations set forth in Paragraphs 1 through 31, as if fully set forth here.

33. The Lanham Act, in relevant part, prohibits a company from engaging in commercial activity that causes confusion, deception, or mistake between that company's goods or services and another company's goods or services.

34. In adopting and using the Zelle Marks, Early Warning has not engaged in any conduct that is likely to cause confusion with Hachette's mark ELLE, as provided by the Lanham Act.

35. Hachette's factual allegations and legal contentions to the contrary are baseless and do not remotely support the claims—much less raise any inference—that Early Warning has violated the Lanham Act or will violate it in the future.

36. Hachette cannot establish any violation of Lanham Act and, consequently, has no basis in law or fact to assert any claims against Early Warning under the Lanham Act.

37. Accordingly, Early Warning seeks a declaratory judgment of non-infringement against Hachette.

## COUNT II – CLAIM FOR DECLARATORY JUDGMENT OF NON-DILUTION

38. Early Warning repeats the allegations set forth in Paragraphs 1 through 31 and 35-36, as if fully set forth here.

39. The Lanham Act prohibits a company from using a trademark that is likely to cause "dilution by blurring" or "dilution by tarnishment" of a famous mark owned by another company.

40. In adopting and using the Zelle Marks, Early Warning has not engaged in any conduct that is likely to cause dilution of the mark ELLE, as provided by the Lanham Act.

41. Accordingly, Early Warning seeks a declaratory judgment of non-dilution against Hachette.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Early Warning Services, LLC prays that this Court grant it the following relief:

1. That this Court declare that Early Warning has not and will not violate the Lanham Act by adopting or using the Zelle Marks in U.S. Commerce;

2. For recovery of all attorneys' fees and costs incurred by Early Warning for having to defend against the harassing, burdensome, and oppressive allegations advanced by Hachette; and

3. For any further relief that this Court deems equitable and just.

Dated: September 15, 2016.                    Respectfully submitted,

                                                  DORSEY & WHITNEY LLP

                                                  By: */s/ J. Michael Keyes*
                                                        J. Michael Keyes

                                                  Attorneys for Plaintiff
                                                Early Warning Services, LLC

## DEMAND FOR JURY TRIAL

Plaintiff Early Warning Services, LLC demands that this action be tried to a jury.

Dated: September 15, 2016.                    DORSEY & WHITNEY LLP

                                                  By: */s/ J. Michael Keyes*
                                                        J. Michael Keyes

                                                  Attorneys for Plaintiff
                                                Early Warning Services, LLC

## VERIFICATION

I, Rose Corvo, am Chief Marketing Officer of Plaintiff Early Warning Services, LLC. I have reviewed the foregoing Verified Complaint, and I declare under penalty of perjury under the laws of the United States of America that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

*/s/ Rose Corvo*

Rose Corvo

Chief Marketing Officer
Early Warning Services, LLC

VERIFIED COMPLAINT                                     10